Hear, read, hear, read, hear, read. The United States Court of Appeals for the 11th Circuit is now recording to Lord God save the United States and his Honorable Court. Good morning. We have four appeals that are scheduled for oral argument this morning on the court's oral argument calendar. Judge Rosenbaum, Judge Hall, and I are ready to proceed with the arguments. Ms. Geddes is the courtroom deputy and she will serve as the counsel for the two minutes before your time to argue has expired. And she will also provide you with a two-minute warning before your time expires. And so I see that counsel are ready to proceed with the first argument. The name of the case is United States of America v. Frantisek Pribyl. Michael Ufferman is here for the appellate. Pribyl Jourdance-Learn is here for the United States. And Mr. Upperman, you may begin with your argument. Good morning. May it please the court. Michael Ufferman on behalf of Mr. Pribyl. And I've reserved five minutes of my time for rebuttal. There's one issue in this case and that is whether the district court erred by denying my client's request for the appointment of an expert to review the electronic communication evidence that the government was relying upon in this case. Now the law regarding the appointment of experts I think is clear. There's no dispute in the briefs. In eight, the Supreme Court held that an indigent defendant is entitled to the assistance of experts at the government's expense. And the Criminal Justice Act, of course, was enacted to comply with the Sixth Amendment's requirement that counsel render effective assistance of counsel. And the standard that this court uses to determine whether or not a defendant is entitled to an expert is twofold. First, is there a reasonable probability that the expert would be of assistance to the defense? And second, would the denial of the request result in either an unfair trial or prejudice? And I submit the record in this case establishes that Mr. Pribyl meets both prongs. Now this request was brought to the court's attention. Counsel, I have a couple of questions for you that sort of bother me about your position. Maybe you can address them for me. The first one is, this case had been continued I think eight times and a lot of time had gone by from the beginning of the case and yet this motion was not brought until literally the morning the trial began. Why doesn't that disqualify it to begin with? And the second question is, in light of the fact that in addition to being brought so late, it appears that at most this would have affected about 30 texts or emails in the string and there is still just such an client. Why in the end would it make a difference anyway, especially since there was no expert on the part of the government? Thank you, Your Honor, and I'll address both of those questions. Let me start with untimeliness. The government raises untimeliness in its brief as well. Now I note that the district court did not find that the request was untimely and I think that's because of the very unique circumstances of this case. You are correct, Your Honor, there had been a number of continuances. The exact amount of time was the indictment was March of 2017. This trial was May of 2018, but if you go through the docket in the timeline, you'd see that this case is extremely unique for a number of reasons. Notably, I would point out that initially a public defender was appointed to represent my client, but then my client retained private counsel in the spring of 2017. Shortly thereafter, counsel filed a motion to question my client's competency and Judge Walker agreed that there was reasons to believe that my client may be incompetent. And that decision was made in July of 2017. So from July of 2017 to December of 2017, this case was on hold while my client was being evaluated for competency. It wasn't until December of 2017 that the competency report came back and said that my client was competent, but immediately thereafter, private counsel then filed a motion to withdraw. That motion to withdraw wasn't heard until January of 2018. And at that point, the current counsel on this case was appointed. And so the time between the counsel's appointment and the trial was only four months, January to May. In that time period, more things happened. And again, going back to why this case is so unique, my client does not speak or his first language is not the English language. The judge agreed with that and the judge appointed an interpreter. So new counsel obviously had to begin the conversation with my client, could only do so through an interpreter. And I can tell you by experience, I've had to go through the same process on appeal. There's been delays in the briefs being filed because it was very difficult for me to find an interpreter throughout this case to be able to get on the phone and allow me to have conversations with my client and interpret those conversations. In March of 2018, shortly after the appointed counsel, CJA counsel was brought into the case, my client filed a motion for the appointment of investigators and other experts. He then filed a FREDA motion and that inquiry did not take place until April. And then again, this trial occurred the next month in May. So I think the combination of those factors, new counsel having only been on the case for four months and because there was an issue regarding the language, new counsel was not able to find out about this until the morning of. Now, regarding the substance of the text or why applying the more Feliciano standard, why this would have made a difference, I note that when the court is, I'm sure, aware of this, this was brought up through my client's daughter, who indicated to the district court that she had a background in computers and electronic communications. She explained that she had downloaded the emails from my client's account and compared them to the emails that the government was relying upon, which were the emails that were obtained from the agent's account. She said that there were emails in the government's account that were not in her father's account. And that's significant. And in particular, when she was 58 of the trial transcript, she mentioned, or she was focusing on emails that occurred during the early morning hours of February 11th, 2017, just after midnight. I would note that many of those emails are contained in government exhibit six. And one of those emails, and this is from February 11th, 2017 at 1253 AM is the, I submit the key email in this case, quote, are you okay with me being 14? An element, an essential element of both of the counts in this case is that the that the person that my client was allegedly conversing with either was, or was believed to be a minor. This was the key email to establish that if so my client's daughter was discussing emails from the early morning hours of February, February 17th, I'm sorry, February 11th, just after midnight, this email was within an hour of that timeframe. So there are emails missing within that chain. And one of the emails that could have been missing is this email. The first time it was that would be a key issue, a crucial issue that the defense could have focused on during the trial. Counsel, did he testify at the trial? He testified and he actually said that he was never aware of that email being sent. So I think his testimony goes hand in hand with if the defense could have established that that email was never sent by the agent and the daughter, you know, again, it wasn't as clear and it's a daughter and that's part of the What did he say at the trial about any conversation that he had with the undercover officer? Of course, his testimony was, and I'll preface this up front, the district court will recognize you can have conflicting theories. And by the time he testified, the judge had already ruled that you're not going to get an expert. But his testimony was that it was he was not the one doing the conversing with the agent. It was his roommate. His roommate was the one that was going to meet up the agent that he all along, he had no idea that the person that was going to be met was a minor. And the roommate was shy and stepped out of the car just before they approached. In other words, Clark's told whoever Clark was conversing with on the telephone, that she was 14. That the initial conversation or the initial communication that I'm referring to was an email, there was a telephone conversation subsequent to that, and my client acknowledged that it was his voice on that conversation. So, again, counsel, wasn't there also an email earlier, that I don't think is subject to this motion, where your client or somebody, according to be your client, says, oh, I know you're not actually the mother, you're the daughter, aren't you? I mean, that was outside of the ones that you're seeking to eliminate, wasn't it? Well, and again, Your Honor, I'm not an expert, the district court's not an expert, no expert has looked at this. So if, if there is the ability to establish that some of these emails were not sent, or were not received by my client, I think that potentially calls all of the emails in question. And the only way that I would know how, as a defense attorney, to look at, I mean, I wouldn't pretend to give an opinion as to whether or not it impacts the entirety of the emails, or just a certain number of them. Only an expert can give that opinion. But in this case, there's, I mean, there's no, the motion affected only a certain number of emails. There's got his his showing up at the at the residence, and letting himself in without knocking or anything. You know, late at night, we've got him showing up at the Walgreens, we've got the telephone calls that he admits it's him speaking on the phone. I mean, why? Why in light of all of that? Why isn't that going to render this motion, even assuming that there's some kind of problem with the emails? Why isn't this going to render this motion to really in the end, not make a difference to the outcome? A couple of responses, Your Honor, and I realize I'm going to go into my rebuttal That's fine. Again, without knowing, without having an expert review this, we don't know which emails were sent to the extent that the defense could establish that it wasn't clearly indicated, especially to someone who may not speak the language that the person that's doing the communicating is a minor, that would be a big issue for the government in this case. Secondly, Defense Council ultimately did not ask for an instruction argument has expired. You can finish your answer, Counsel. Thank you. The Defense Council didn't ask for an entrapment jury instruction, because at that point, there was no evidence to establish it. But usually in these Craigslisting cases, an entrapment instruction is given. In fact, the district court asked and pointed out that it's normally given. You can imagine that other emails that may not have been received or other things that weren't properly disclosed through the email communication chain would lay the basis for an areas that these emails, had they been properly evaluated by an expert, and had it been established that there was missing information or information that was not properly received by Mr. Pribble, that could have impacted the defenses that he's raising. And ultimately, there are some other factors in this case, but I still think this is an email case. The communications, the electronic communications established the basis for both counts in this case, whether it's a minor and whether there's an intent to engage in sexual conduct. So at this stage, what's the harm in not allowing, or in allowing an expert to review this, so we can all be sure that either it's there. But counsel, I mean, fishing expeditions are not allowed. I mean, they're not, there's nothing that requires a district court to authorize a fishing expedition. And it seems like in this case, there were lots of easily explainable reasons here that explain every single thing that the client's daughter brought up. And, you know, I mean, we've all had our own personal experiences where we've seen quoted context hidden or quoted messages hidden or something to that effect, how all of that gets collapsed in when you send back and forth these emails, which all seems very reasonable. In other words, there's nothing from looking at this that appears suspicious on its face and your client's daughter, you know, couldn't say anything other than to just point to these few things, which are all easily explainable. And, you know, so I'm not sure why they, why, you know, the district court would have abused its discretion in denying an expert in this case. Your Honor, if I could briefly respond, I don't agree that all the points are reasonably explained. The, our difference is clearly explained. I don't dispute that, but if there's missing emails, that's not easily explained. If there's missing emails and that establishes that some things the government is claiming were sent to my client, were not received by my client. And if some of those things involve either entrapment or the age of the person doing the communicating, that would be a huge issue for the defense. And the last thing I would know before I Feliciano and Ranchak are very different from this. In both cases, this court denied relief because it said that the thing that the defense was trying to establish and Feliciano was an MRI regarding the back and Ranchak, it was mental health information. In both cases, the court pointed to the fact that the defense was already, already able to put on information from an expert to establish either the back injury or the mental health issue. In this case, the defense wasn't able to put on any of that. You have a government witness who claimed to be an expert in forensic extraction, agent Prado, who specifically said the evidence was not manufactured and was not changed. There is no way defense counsel without having an expert could properly process examine him on that point. The only way defense counsel could properly respond to any such testimony is to have an independent expert review this and offer an opinion as to whether or not either was not manufactured or modified or changed. I reserve my remaining time for rebuttal. Thank you. All right. Thank you, Mr. Offerman. And you'll have your full time for rebuttal. Thank you. We'll hear from the United States, Ms. Lern. Good morning. May it please the court. This is Jordan Lern on behalf of the United States. I think I'd like to begin by emphasizing the narrowness of the district court's ruling in this case. It wasn't that Pribble could not present his defense that or a defense that challenging the authenticity of the government's email records. It wasn't that Pribble could not testify as to the authenticity or challenge the authenticity of the government's email records. It was simply that Pribble was not going to on the district court was not going to continue trial. The morning the trial was set on the ground in order to facilitate an expert brought to the case. And so I think I would disagree with any suggestion that an expert was necessary even to present this defense. I want to go back to Mr. Offerman's point about Agent Prado's testimony. I don't think he was qualified as an expert. He did testify that he had some background experience in extraction of devices, but that wasn't really in the context of discussing email evidence. That was fully about the extraction of the cell phone, which as we learned through his testimony did not yield any email evidence. So we did. Counsel, what do you say in response to Mr. Offerman's argument that the 29 emails were just totally missing from the transcript that Mr. Pribble's daughter brought in? Your Honor, my response to that, and I think this would be what the district court found, is that doesn't establish, at least in the district court's mind, that the authenticity of the evidence was in question. I think the district court recognized that there was a number of possible explanations and Pribble wasn't really able to say much more than we found some that were missing. The other point that I would make is it's difficult to assess how impactful any expert testimony would have been without knowing which 29 communications were alleged to have been missing from the exhibit, or at least from what Pribble printed out from her father's account. And I think what's clear from Moore and Akey is that it's really incumbent on defense counsel to articulate precisely why the expert is needed and how it's going to factor into the defense. And so I think it's incumbent on defense counsel in this case to articulate specifically what is alleged to have been missing that would have factored into the defense or into any proposed or, you know, defense they'd like to explore. I would also note for the court that this exhibit was actually stipulated prior to Pribbleva appearing and giving her testimony, and then even after her testimony happened and the court considered it and denied the motion for expert, that stipulation wasn't withdrawn. So the government wasn't even put to its full burden to authenticate any of its exhibits because it just simply wasn't an issue at trial. And so I think, you know, in light of all those factors, it really is incumbent upon Pribble's counsel to specify how this, you know, any expert that he's seeking is going to factor into the defense that he intends to propose. And I think when you look at the trial record, I think it's clear that, you know, challenging the authenticity of the government's exhibits really wasn't going to be a factor of Pribble's defense either way. And that makes sense when you see, you know, how Pribble's testimony played out. His testimony was essentially, it was my roommate and I wasn't really involved in those communications. And yes, I drove him to Tallahassee, but we didn't know that, you know, it was a minor or I didn't know that it was a minor. So I think it's incumbent upon defense counsel, especially under Moore, you know, it's not, it's not a fishing expedition. You aren't entitled to an expert just because you think you may yield positive evidence from an expert. You have to articulate a specific reason how that is going to shape or be a part of your defense. And if you go all the way back to Aikie, which is, you know, the main Supreme Court case that, on this issue, and it was, I think their language was a significant or substantial factor at trial. And we don't have anything here conclusively in the record that says that any expert testimony, even if it's substantiated that 29 communications were missing from cripple side of the conversation, we don't know what those 29 communications were. So there's really no way we have an idea of maybe some of them. And I think as the district court found, he said they weren't the smoking gun statements. And I don't think there's anything on the record that contradicts that. And I think at that point, if defense counsel disagreed and thought that maybe it did implicate some of the smoking gun statements, it would be incumbent upon defense counsel to say that. And when it made, when he made his motion and essentially, the motion, as I recall, it was just, there's a discrepancy, and we'd like it like to look at looked at. So there's no greater context and how this would play into pebbles defense. The other thing I would note is I think this court can easily dispose of this case on the grounds of untimeliness. purple had received eight continuances. Sure, I also what about what about your colleagues argument that the district court didn't find that to be an issue at all? I would disagree the district court didn't find that to be an issue. There's certainly some comments on the record where he says, had this been truly newly discovered evidence, you know, it would be have been characterized differently. He definitely expressed some sentiments that, you know, this had been sat on, he said that the email account had long been available to purple and his counsel and that this was just, you know, it wasn't a surprise to him that this didn't come forward sooner based on things he experienced previously in trial. So I wouldn't say that he thought it was no problem. He certainly didn't deny the motion, I think, based on untimeliness. But I think it's clear under the law in this circuit, the motion was untimely and the district court does not abuse its discretion by denying emotion that's presented the morning of trial. And I would say that this court can affirm for any reason that's supported by the record. And I think here the record certainly supports affirming the district court's exercise of discretion solely on the basis of untimeliness. I will say also, and Judge Walker, in considering the context of Prevlova's testimony, Judge Walker actually, gets out through two previous trials from the same operation. So he wasn't, he hadn't seen the government's, all the government's evidence in this case, but he was very familiar with how the government's presentation would look like. And in particular with this exact operation, Operation Cupid's Arrow, our district took a number of cases to trial on this and Judge Walker heard all of them. And at least two of them went to trial before Prevlova's case. I can give the court the appeal numbers for those if it would like them. So Judge Walker had a pretty good understanding of what the government's presentation would look like, including that we would be using email evidence from undercover chatters. And so I think in light of that understanding and everything that was put on the record, I don't think this court could make any finding that Judge Walker clearly aired in any of his conclusions about how Prevlova's proposed testimony or any proposed expert testimony would have impacted this case. So I think in light of all of what Judge Walker found and in light of the way the trial actually played out and the fact that all of the government's exhibits were stipulated to means really this was not an issue. The defendant simply didn't meet his burden in this case to establish that he was entitled to an expert, either because it would be helpful for the defense or that he would be denied his fundamental right to a fair trial. And again, to that latter point, I'd like to emphasize if Prevlova had the tools available to make the authenticity of the government's exhibits an issue at trial, he could have called his daughter to testify. She gave Judge Walker a background about how she pulled the exhibits. She expressed even some technical knowledge of the exhibits. And she certainly could have qualified, or excuse me, could have testified that she had downloaded them off from her father's email account and it didn't match with what the government had. And then the jury, there would have been jury on who to believe. The last point I think I'd like to make is I would like to go back to, I think, Agent Prato's testimony, because I want to emphasize to the court, I don't think he testified as an expert in regard to the email communications. I don't even think he was shown the email communications. He did testify to some degree about the extraction of the phone and that tied into his extraction expertise. But with regard to the emails, his testimony was that Detective Clark had been the one who had collected all of those, who had collected that those documents in that exhibit, and that he had reviewed it not in the context of, you know, the extraction, but as his, you know, as his role as a case agent who was supervising Detective Clark, because that's the way the operation worked. He had a chatter in a room, he would be engaging in the conversations, and once the chatter thought they had enough evidence, which included a clear indication of the purported minor's age, then they would bring the case agent in, would become involved, and the case agent would review what the chatters, you know, the evidence the chatters had currently collected, and then make a determination about whether or not they believed a crime had been committed, and if the determination was affirmative, yes, then they would authorize release of the meetup locations. And so that's the capacity that Agent Prato reviewed the email evidence. There was some questions on, during the government's redirector examination, about whether or not Agent Prato had any reason to believe that the emails had been tampered with, or manufactured, and he said no. But I don't think he testified that he examined them, and, you know, confirmed their authenticity. And I think the only reason those questions came out is, you know, the government doesn't know what the defense case is going to be, and so, you know, the issue had come up, you know, immediately previous in trial. So that's my best guess is that. But unless the court has any other questions about this case, I think we'll rest on our brief and ask the district court to ask that you affirm the district court's decision to deny expert services and affirm Pribble's convictions. Thank you. Thank you, counsel. Mr. Offerman, you've reserved some time for rebuttal. Thank you, Your Honor. May it please the court. I'm hoping to make two points in rebuttal. The first is this. I submit that if this case is viewed in the context of timing, and if there had been a hearing, let's say, in April or May of 2017, shortly after the indictment, and if defense counsel had brought along Mr. Pribble's daughter, who has a background in computers, and said, I want to have an expert appointed, and the district court would have said, give me some reason that you have to believe that the government's evidence was somehow modified. If defense counsel at that point would have presented what was presented on the morning of trial from Mr. Pribble's daughter, that would have been sufficient, and the court would have found, I think you've met your burden. I'm going to go ahead and appoint an expert. And if I'm right on that, then the fact that it was brought up on the morning of trial, in light of the circumstances that I previously mentioned regarding the language barrier and the competency issues, and new counsel having just come on board, I submit that my client is entitled to release. Mr. Offerman, that seems to be inconsistent with what the judge actually stated when he denied the motion to appoint an expert. He said, if there were a, I'm quoting him now, he says, if there were a hint, even a whiff of evidence to suggest that there was a reason to question the authenticity of the email exchange, then I would err on the side of caution and once again continue this trial. You're correct, your honor. He did say that. I submit that from the two points that were brought up, I think we all can agree that none of us have a concern about the difference in the one hour. That was explained. But when there's an allegation about missing emails, and if you go through, and I went through it several times, certainly again this morning, prepared for the oral argument one last time, there's nothing in there after it's continued to be brought up, and Judge Walker questions the daughter several times, and she's adamant that there are missing emails. There's no reasonable explanation. When the government was asked to chime in, the government didn't give, they said that perhaps something wasn't clicked on, and had you clicked on it, you would see the rest of the exchange. That's not what she was asserting. She was asserting not that you could click on something and see them, she was asserting that they were missing. So respectfully, I think, Judge Walker said that, and I again submit that had this been presented to Judge Walker a year prior, he would not have said the same thing, and he would have appointed the expert. And ultimately, it comes down to my client's right to a fair defense versus any concern regarding expeditiousness. And ultimately, my client's right to a fair defense must ultimately win and trump out at the end. Because going back to my last point then, the government argues that Agent Prado didn't say anything about the authenticity or didn't testify as an expert. I'll read to you his testimony. It's pages 318 and 319. Question from the prosecutor, do you have any reason to believe that the evidence was manufactured? Answer, I have no reason to believe that the evidence was manufactured. Do you have any reason to believe that the evidence was modified or changed in some fashion? I have no reason to believe it was modified or changed. Final question, do you have any reason to believe that the evidence of those emails or any emails were hidden from the defendant? I have no reason to believe that they were hidden from the defendant. There's no way defense counsel could properly respond to that without having his own expert. To suggest that my client's daughter would be presented so late in the game and be the person to try to be the defense expert, I submit defense counsel, if he was here today, would tell you there's no way I would go down that road. I'm already doing my best to present a defense to this jury. I need them to believe me. I need to have credibility. Putting on my own client's credibility, the only way defense counsel would have any credibility to properly challenge what Agent Prado said to the jury is to have his own expert. Now, maybe his own expert wouldn't establish anything that would further result in a defense. But at this stage, we simply don't know. And my client's never going to get that opportunity if he doesn't get it now. Because in any 2255 motion, he's going to have the burden to go out and retain his own expert. And we know he's indigent. He's not going to be able to do that. That's exactly why we have the Criminal Justice Act. That's exactly why we have Aik and his progeny. So defendants in this assertion that there's a reason to get an expert, they should be able to get that expert. So I've explained the timeliness. I don't think I can explain it any better. I think these are very unique circumstances. So the fact that it was brought in the morning of the trial should not be held against defense counsel or my client. I think defense counsel was finding out for the first time. So the fact that he had previously agreed to exhibits, he did that without knowing that there was a real concern regarding these email communications. But once it was brought to his attention, he brought it to the judge's attention and said, I'm moving to continue the and that should have been what happened in this case. The only way we can have any confidence in the outcome of this case is if my client is given an opportunity to have an expert review the communications and either presented defense based on whatever the expert says or not. But at this point, we simply don't know. And my client has been denied a fair trial as a result of that. So I'd ask this court to reverse. Thank you. Thank you, Mr. Offerman and Ms. Lerne. This case was well argued. And Mr. Offerman, I know that you were appointed by the court to represent Mr. Prible and the court appreciates and thanks you for your service.